Huayang Sonny Cui
**PETITIONER**

v.

Kenneth Jones / Second line supervisor
**DEFENDANT**

_____

Parent/Guardian name if defendant is a minor

2022-00997 ____ COURT

PARISH/CITY OF _____

STATE OF LOUISIANA

DIVISION: _____   NUMBER: _____

FILED: _____   CLERK: _____

**PETITION FOR PROTECTION FROM ABUSE**   DOMESTIC RELATIONS
Pursuant to La. R.S. 46:2171 et seq  or La. R.S. 46:2181 et seq.   SECTION 1

**This petition is:**  ☐ Initial Petition  ☐ Supplemental and Amending Petition

The petition of _____Huayang Sonny Cui_____, born __/_/ 04/27/59__
            *your name*                          *month/day/year*

a resident of the State of Louisiana, respectfully represents:

### Paragraph 1:  Petitioner/Protected Person(s)

Petitioner files this petition on behalf of:

a. __✓__ Petitioner, and/or

b. ____ Minor child(ren) as follows:  (Name, Date of Birth, Relationship to Petitioner)

_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____

c. ____ Alleged incompetent as follows: (Name, Date of Birth, Relationship to Petitioner)

_____  _____  _____

### Paragraph 2:  Protected Person(s) Address

a. ____ Petitioner requests that his/her address, or that of the minor child(ren) or alleged incompetent, remain confidential to the court and files the address pursuant to La. R.S. 46:2134(B).
*(Ask clerk of court for the Confidential Address Form.)*

**OR**

b. __✓__ Petitioner's current address:

__804 Joe Yenni Blvd , Apt. 14__
No. & Street                                    Apt. No.

__Kenner__            __LA__        __70065__
City                    State          Zip Code

c. ____ The minor child's or alleged incompetent's current address:

_____
No. & Street                                    Apt. No.

_____
City                    State          Zip Code

### Paragraph 3: Special Requests

a. ____ Petitioner requests interpreter service, for:

☐ self/protected person, in following language: _____
☐ witness(es), in following language: _____

VERIFIED
2-3-22   LPOR D
         v.14

GOVERNMENT
EXHIBIT
1

b. _____   Petitioner requests criminal history record from sheriff for:

☐ defendant
☐ witness(es) (see information on Addendum, page 8)

**Paragraph 4: Defendant Address**

_Kenneth Jones_____, defendant, ~~resides in~~ _Works at New Orleans VA Hospital_ Parish at
Abuser's Name

_2400 Canal Street_    _J Tower 1st Floor_    _LA_    _New Orleans 70119_
No. & Street                          Apt. No.              State       Zip Code

**Paragraph 5:  Venue**

This Court is the proper venue for this action because:

X   The defendant resides in _____Unknown_____ Parish.
X   The stalking/~~sexual assault~~ mental abuse occurred in _New Orleans City_ Parish.
X   The protected person(s) resides in _Kenner City_ Parish.
      **(Do not fill this out if address is to remain confidential.)**

**Paragraph 6:  Relationship**

The defendant is an acquaintance of or stranger/unknown to the protected person(s).

**Paragraph 7:  Description of stalking/sexual assault**

a. **Stalking** (La. R.S. 46:2171 et seq.):  Defendant intentionally and repeatedly engaged in the following behavior(s) which caused the protected person to feel alarmed or to suffer emotional distress:

| | |
|---|---|
| ___ Followed protected person(s) | ___ Implied or threatened protected person(s) with bodily injury |
| X Harassed protected person(s) at workplace | X Implied or threatened protected person(s) employment and personal status |
| ___ Uninvited presence at protected person(s)' home | ___ Used tracking device to monitor protected person(s) |
| ___ Uninvited presence at protected person(s)' workplace | ___ Stalked, harmed/threatened to harm protected person(s) or member of protected person(s)' family or acquaintance of protected person(s) |
| ___ Uninvited presence at protected person(s)' school | |
| ___ Uninvited presence at other places | ___ Implied or threatened protected person(s) with kidnapping |
| X Made/sent telephone calls, texts, emails or other electronic communications to protected person(s) | ___ Implied or threatened protected person(s) with sexual assault |
| ___ Sent messages via a third party, letters, pictures, public posts to social media | ___ Possessed a dangerous weapon during any of the foregoing behaviors |
| ___ Sent unwanted gifts to protected person(s) | ___ Threatened protected person(s) with a dangerous weapon |

X Other: _please see my report and family doctor's medical order_

b. **Sexual assault** (La. R.S. 46:2181 et seq.):  Defendant intentionally assaulted the protected person in the following manner:

____ Touched the protected person's genitals, anus, breasts or buttocks (either directly or through clothing) using defendant's body part(s) or other objects, without consent.

____ Forced the protected person to touch the defendant's genitals, anus, breasts or buttocks (either directly or through clothing) using protected person's body part(s) or other objects.

____ Penetrated the protected person's vagina or anus using defendant's body part(s) or other objects, without consent.

____ Forced the protected person to penetrate the defendant's vagina or anus, using protected person's body part(s) or other objects.

____ Displayed genitals, anus, and/or female breast nipples to protected person without consent, in a public place or prison/jail.

____ Deceived the protected person into engaging in anal, oral or vaginal intercourse with the defendant by misrepresenting themselves as someone else known to the protected person.

____ Sent an electronic communication, letter, photograph, or drawing containing sexually explicit materials or content to the protected person without consent.

____ Exposed the protected person to the HIV/AIDS virus through sexual contact without the knowing and lawful consent of the protected person.

____ Viewed or spied on the protected person at a private residence without consent for defendant's sexual gratification.

____ Used an image or video recording device to view or observe the protected person without consent for a lewd or lascivious purpose.

____ Electronically transferred an image or video of the protected person obtained by the above without the consent of the protected person.

____ Gave a drug, narcotic, anesthetic, intoxicant agent or other controlled dangerous substance to the protected person without her/his consent.

____ Possessed a dangerous weapon at the time of any of the foregoing behaviors.

____ Threatened the protected person with a dangerous weapon during any of the foregoing behaviors.

____ Other:

_____

_____

c.  The facts and circumstances of stalking or ~~sexual assault~~ *mental abuse* are as follows:

The most recent incident of stalking or sexual assault which caused petitioner to file this petition happened on or about
*02/07 2022* _____ *(date)* at which time the defendant did:

Kenneth Jones disrespects my family doctor's medical order of no verbal or written contact with me due to their wrongful actions caused me to experience mental health problems. In July 2021, he issued me a harassment reprimand with no just cause.

_____

_____

_____

_____

_____

_____

_____

_____

Past incidents:  Please see a copy of my report

_____

_____

_____

_____

_____

_____

_____

LPOR D
v.14

**Paragraph 8:  Requests for relief**

Because of the immediate and present danger of ~~stalking, or sexual assault,~~ petitioner requests that an *ex parte* Temporary Restraining Order be issued immediately without bond. *Workplace harassment and mental abuse*

_____ a.   prohibiting defendant from abusing, harassing, assaulting, stalking, following, tracking, monitoring, or threatening the protected person(s) in any manner whatsoever.   This prohibition includes the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury.

___✓___ b.   prohibiting the defendant from contacting the protected person(s) personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication, or sending gifts to the protected person(s).

_____ c.   prohibiting defendant from going within one hundred (100) yards of the residence, apartment complex, or multiple  family dwelling of the protected person(s) located at:

_____ d.   ordering the defendant to stay away from the protected person(s)' place of employment/school and not to interfere in any manner with such employment/school located at:

| Employment/School | Address | City | State | Zip Code |
|---|---|---|---|---|
| Employment/School | Address | City | State | Zip Code |

_____ e.   ordering the defendant not to damage any belongings of the protected person(s), not to shut off any utilities, telephone service, or mail delivery to the protected person(s), or in any way interfere with the living conditions of the protected person(s).

_____ f.   granting the petitioner or protected person(s) the use of the residence located at:

| No. & Street    Apt. No. | City | State | Zip Code |
|---|---|---|---|

to the exclusion of defendant by **evicting** defendant and ordering the defendant to surrender any keys to that residence to the petitioner, and ordering _____ (Sheriff's office) to **evict** the defendant.
Said residence is:
_____ jointly owned by defendant and petitioner or protected person(s).
_____ jointly leased by defendant and petitioner or protected person(s).
_____ solely owned or leased by petitioner or protected person(s).

Presently occupied by _____.

_____ g.   granting petitioner or protected person(s) possession of the following property (including pets or other animals) **solely owned or leased by petitioner or protected person(s)** (state location of each by street address and who is presently in possession).

_____

_____

_____

_____

granting petitioner or protected person(s) the exclusive use and possession of the following property (including pets or other animals) **jointly owned or leased by petitioner or protected person(s)** (state location of each by street address and who is presently in possession).

_____

_____

_____

_____

for the following reasons: _____

_____

_____

LPOR D
v.14

And ordering _____ (Sheriff's office) to accompany petitioner to where the above listed property is located to allow petitioner to take possession.

_____ h.  prohibiting either party from transferring, encumbering, or otherwise disposing of property jointly owned or leased, except in the normal course of business or necessary for the support of the petitioner and/or the minor child(ren) or alleged incompetent.

_____ i.  allowing _____ to return to the residence at a date and time to be agreed upon by petitioner and law enforcement agency, to recover his/her personal clothing and necessities, only if s/he is accompanied by a law enforcement officer to ensure the protection and safety of the parties.  NO FORCED ENTRY ALLOWED.

_____ j.  ordering a representative of _____ (Sheriff's office) to

accompany _____ to the family residence to recover her/his personal clothing

and necessities.

_____ k.  prohibiting the defendant from contacting protected person(s)' family members, or individuals with whom protected person(s) is acquainted.

## Paragraph 9:  Other Requests

Petitioner desires that a rule issue herein ordering defendant to show cause why the orders requested in Paragraph 8 should not be made into protective orders, and why defendant should not also be ordered:

_____ to seek professional counseling
_____ to submit to a medical evaluation and/or a mental health evaluation
☒ to pay costs of court in this matter.
☒ to pay attorney fees  for upcoming lawsuit .
_____ to pay evaluation fees
_____ to pay expert witness fees
☒ to pay cost of medical / psychological care for the protected person(s), necessitated by the stalking or sexual assault
_____ to vacate the residence or household, thereby granting petitioner possession thereof
_____ other: _____

## PRAYER

**WHEREFORE,** petitioner prays that service and citation issue herein, and that: *(check all that apply)*

_____ orders appointing an interpreter be granted *ex parte*.
_____ orders authorizing criminal history records be granted *ex parte*.
_____ orders requested in Paragraph 8 be granted *ex parte*.
_____ a rule issue to show cause why protective orders as requested in Paragraph 9 should not be granted.
_____ defendant be cast with costs.
_____ defendant be advised of penalties for violating Stalking or Sexual Assault Prevention Orders.
_____ all other equitable relief as the court deems proper and necessary.

Respectfully submitted by    *Huayang Sonny Cui*
                             PETITIONER, IN PROPER PERSON

_____    _____    _____
ATTORNEY Signature           Print Name                   La. Bar Roll No.

_____    _____
Phone No.                    Physical Address

_____
Alternate Address (for service)

PLEASE SERVE DEFENDANT: ___*Kennelly Jones*___ personally at his/her home or
place of employment at the following address:
_*Room 104 J Tower*_    _____
_*2400 Canal Street*_   _____    OR
_*New Orleans, LA 70119*_  _____

LPOR D
v.14

**AFFIRMATION**

STATE OF LOUISIANA
PARISH OF Orleans

I am the petitioner in this Petition for Protection from Stalking or Sexual Abuse; I have read the allegations contained therein and declared them to be true and correct to the best of my knowledge, information, and belief. Further I believe that the defendant poses a threat to my safety and/or to the child(ren) or to others for whom I have requested relief.

I am aware that any false statement made under oath contained in the foregoing petition and this affirmation may constitute perjury pursuant to R.S. 14:123.

I have made this affirmation before the witness who signed below on ___02/03/2022___ (Date).

_____
PETITIONER SIGNATURE

PRINTED NAME OF WITNESS: _Jacquelyn Howard_

_____
WITNESS SIGNATURE

LPOR D
v.14

## INFORMATION FOR SERVICE OF PROCESS
### PROVIDED BY PETITIONER/PETITIONER-IN-RECONVENTION

PLEASE PROVIDE AS MUCH INFORMATION AS POSSIBLE. THIS INFORMATION WILL HELP LAW ENFORCEMENT LOCATE DEFENDANT (or DEFENDANT-IN-RECONVENTION) TO SERVE A COPY OF THE PETITION AND TEMPORARY RESTRAINING ORDER (IF ISSUED). THE FOLLOWING INFORMATION IS NEEDED ON THE **DEFENDANT (or DEFENDANT-IN-RECONVENTION)**.

NAME ___Kenneth Jones___

Name of minor defendant's (or defendant-in-reconvention's) parent or guardian: _____

OTHER NAMES USED _____

DATE OF BIRTH ___1958___ (month/day/year)    SOCIAL SECURITY # _____

DRIVERS LICENSE # _____    STATE _____    EXP. DATE _____

HOME ADDRESS _____

No. & Street _____    Apt. No. _____
TEL. NO. _____

City ___Room 104 J Tower  VA Hospital Building Complex___
State    Zip Code

WORK ADDRESS

Name of employer ___2400 Canal Street___

No. & Street ___New Orleans___    Apt. No. _____    DEPARTMENT _____

City    State    Zip Code

TEL NO. ___unknow___    WORK DAYS/HOURS _____

PHYSICAL DESCRIPTION:    ☒ MALE ☐ FEMALE    RACE ___White___

EYE COLOR _____    HAIR COLOR ___Black___    HEIGHT _____    WEIGHT _____

DISTINGUISHING FEATURES (scars, tattoos, facial hair, etc.) _____

MOTOR VEHICLE:
LICENSE PLATE # _____    YEAR _____    MAKE _____    COLOR _____

DOES THE DEFENDANT (or DEFENDANT-IN-RECONVENTION):

HAVE A HISTORY OF ~~VIOLENCE TOWARDS OTHERS (OTHER THAN VICTIM)?~~ lying under oath    ☐ YES  ☒ NO

HAVE A HISTORY OF USING/ABUSING DRUGS OR ALCOHOL?    ☐ YES  ☒ NO

CARRY A WEAPON?    ☐ YES  ☒ NO

IF YES, WHAT KIND OF WEAPON? _____

OTHER PLACES AND TIMES S/HE MAY BE FOUND: (Friends, relatives, bars, hangouts) _____

☐ DEFENDANT/DEFENDANT-IN-RECONVENTION CURRENTLY INCARCERATED
Where: _____
☐ DEFENDANT/DEFENDANT-IN-RECONVENTION CURRENTLY ON PROBATION/PAROLE
Probation or parole officer/department: _____

ANY OTHER INFORMATION WHICH MAY BE HELPFUL: _____

_____    _____
Date    Petitioner's / Petitioner-in-Reconvention's Signature

LPOR H
v.14

## LOUISIANA UNIFORM ABUSE PREVENTION ORDER

### Order of Protection

Temporary Restraining Order

| | |
|---|---|
| Docket No. | 22 997 |
| Court: | Div.: |
| City/Parish | State |
| Orleans | Louisiana |
| Filed: | Clerk: |

**PETITIONER**

Hilayang Sonny Liu
First   Middle   Last

**PETITIONER IDENTIFIERS**

| Date of birth | Race | Sex: Fe | Sex: M |
|---|---|---|---|
| 04/27/1959 | Asian | | X |

Protected person is: ☒ Petitioner   ☐ Other(s)   List other(s) name & date of birth:

## V.

**DEFENDANT NAME AND ADDRESS**

Kenneth   Jones
First   Middle   Last

Name of minor defendant's parent or guardian

Defendant's Alias: work address
Room 104, J Tower, VA 2400 Canal St.
No. & Street                     Apt. No.
New Orleans LA   70119
City      State      Zip Code

**DEFENDANT IDENTIFIERS**

| SEX | RACE | DOB | HT | WT |
|---|---|---|---|---|
| M | White | 1958 ? | 5 | 150 |
| EYES | HAIR | SOCIAL SECURITY # | | |
| ? | black | ? | | |
| DRIVER'S LICENSE # | | STATE | EXP DATE | |
| | | | | |

**THE COURT HEREBY FINDS:**
That is has jurisdiction over the parties and subject matter, and the defendant has been or will be provided with reasonable notice and opportunity to be heard. Additional findings of this court are as set forth on the following pages.

**THE COURT HEREBY ORDERS:**
That the above-named defendant be restrained from committing further acts of abuse or threats of abuse, stalking or sexual assault. Additional terms of this order are as set forth on the following pages.

**EXPIRATION:**
This order shall be effective through 11:59 PM on

2/24/22 (month/day/year)

**ENFORCEMENT:**
This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265).

**WARNINGS TO DEFENDANT:**
Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (19 U.S.C. Section 922[g][8]). See further notice on page 6 of this Order.

**ONLY THE COURT CAN CHANGE THIS ORDER.**

| LOUISIANA UNIFORM ABUSE PREVENTION ORDER |
|---|

| TEMPORARY RESTRAINING ORDER |
|---|
| Pursuant to: |

| ☐ La. R.S. 46:2131 et seq. (Domestic Abuse) | ☐ La. R.S. 46:2171 et seq. (Non-intimate stalking) | 46:2171 and 46:2181 valid for relationships in Box C below ONLY |
|---|---|---|
| ☐ La. R.S. 46:2151 (Dating Violence) | ☐ La. R.S. 46:2181 et seq. (Non-intimate sexual assault) | |

| ☐ La. Ch. C. Article 1564 et seq. (Children's Code Domestic Abuse) |
|---|

PETITIONER  *Huayang S. Cui*          Protected person is: ☐ Petitioner ☐ other(s)

**V.**

DEFENDANT  *Kenneth Jones*

**The protected person(s) is related to the defendant as:** *(check all that apply)*

**A**
☒ 1. current or former spouse — *supervisor*
☐ 2. current or former intimate cohabitant
☐ 3. child, stepchild, or foster child
☐ 4. child of defendant's current or former intimate partner
☐ 5. protected person and defendant have a child(ren) in common

**B**
☐ 1. current or former dating partner
☐ 2. parent, stepparent, or foster parent
☐ 3. grandparent or other ascendant
☐ 4. grandchild or other descendant
☐ 5. child currently or formerly living with defendant

**C** *Select ONLY if statute 46:2171 or 46:2181 is marked above*
☐ 1. stranger/no relationship
☒ 2. acquaintance

**D**
☐ **FINDING: Domestic Abuse or Dating Violence**
THE COURT FINDS THAT THE ALLEGATIONS PRESENTED CONSTITUTE AN IMMEDIATE AND PRESENT DANGER TO THE PHYSICAL SAFETY OF THE PROTECTED PERSON(S).

☐ **FINDING: Stalking**
THE COURT FINDS THAT THE ALLEGATIONS PRESENTED CONSTITUTE AN IMMEDIATE AND PRESENT DANGER OF STALKING.

☐ **FINDING: Sexual Assault**
THE COURT FINDS THAT THE ALLEGATIONS PRESENTED CONSTITUTE A SEXUAL ASSAULT.

**THUS, THE COURT ISSUES THE FOLLOWING ORDERS, WITHOUT A HEARING:**

| **E** | ☐ The court orders interpreter services | ☐ The court orders the sheriff to provide criminal history records of defendant and/or witnesses |
|---|---|---|

**IT IS ORDERED THAT THE DEFENDANT BE SERVED WITH A COPY OF THIS ORDER.**

Docket No. _22.991_

| DOMESTIC ABUSE, DATING VIOLENCE, STALKING OR SEXUAL ASSAULT |
|---|
| ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY |

☑1. THE DEFENDANT IS ORDERED NOT TO abuse, harass, assault, stalk, follow, track, monitor, or threaten the protected person(s) in any manner whatsoever.  This prohibition includes the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury.

☑2. THE DEFENDANT IS ORDERED NOT TO contact the protected person(s) personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication without the express written permission of this court.
Exceptions (if any):_____
_____

☑3. THE DEFENDANT IS ORDERED NOT TO go within _100 yards_ (distance) of the protected person(s), without the express written permission of this court. **DENIED**
Exceptions (if any): _Defendant cannot go within 100 yards of petitioner outside of the workplace_

☐4. THE DEFENDANT IS ORDERED NOT TO go within one hundred (100) yards of the residence, apartment complex, or multiple family dwelling of the protected person(s).

| No. & Street | Apt. No. | City | State | Zip Code |
|---|---|---|---|---|

☐5. THE DEFENDANT IS ORDERED TO STAY AWAY from protected person(s)' place of employment/school and not to interfere in any manner with such employment/school.

| Employment/School | Address | City | State | Zip Code |
|---|---|---|---|---|
| Employment/School | Address | City | State | Zip Code |

☐6. THE DEFENDANT IS ORDERED NOT TO damage any belongings or property of the protected person(s) and not to shut off any utilities, telephone service, or mail delivery to the protected person(s) or in any way interfere with the living conditions of the protected person(s).

☐7. THE COURT GRANTS THE PETITIONER or protected person(s) the use of the residence   located at:

| No. & Street | Apt. No. | City | State | Zip Code |
|---|---|---|---|---|

to the exclusion of defendant by **evicting** defendant.  The Court orders the defendant to surrender any keys to that residence to the petitioner.

_____ (Sheriff's office) is ordered to **evict** the defendant.

☐8. THE COURT GRANTS THE PETITIONER or protected person(s) the use and possession of the following property (including pets or other animals) and/or the return of protected person(s) property:
_____
_____
_____
_____
_____
_____
_____

☐9. THE COURT ORDERS a representative of _____ (Sheriff's office) to accompany petitioner to obtain property listed in Order No. 8 above.

Docket No. _22.991_

____ ☐10.   THE COURT PROHIBITS EITHER PARTY from transferring, encumbering, or otherwise disposing of property jointly owned or leased, except in the normal course of business or that which is necessary for the support of the petitioner and/or the minor child(ren).

____ ☐11.   THE COURT WILL ALLOW _____ to return to the residence at a date and time to be agreed upon by petitioner and law enforcement agency to recover his/her personal clothing and necessities, provided that s/he is accompanied by a law enforcement officer to ensure the protection and safety of the parties.  NO FORCED ENTRY ALLOWED.

____ ☐12.   THE COURT ORDERS a representative of _____ (Sheriff's office)

to accompany _____ to the residence located

at _____ to recover her/his personal clothing and necessities.

---

**DOMESTIC ABUSE, DATING VIOLENCE ONLY**
ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

---

____ ☐13.   THE COURT GRANTS TEMPORARY CUSTODY of the following child(ren) or alleged incompetent to the petitioner: *(name, date of birth, and relationship to petitioner)*

_____

_____

____ ☐14.   THE COURT ORDERS a representative of _____ (Sheriff's office) to accompany petitioner to where the minor child(ren) or alleged incompetent mentioned in paragraph above is/are currently, and to effect petitioner obtaining physical custody of said child(ren) or alleged incompetent.

____ ☐15.   THE DEFENDANT IS ORDERED NOT TO interfere with the physical custody of the minor child(ren) or alleged incompetent.

____ ☐16.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be evicted from the solely owned residence or household and the petitioner granted possession.

____ ☐17.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be ordered to pay child support and/or spousal support (alimony) pursuant to Louisiana Law.  **The court further orders the defendant to produce at the hearing: most recent income tax returns AND pay stubs or an employer statement documenting gross income to date for the CURRENT year.  If the defendant is self-employed, income and expense statements shall be produced.**

---

**STALKING, SEXUAL ASSAULT ONLY**
ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

---

____ ☐18.   THE DEFENDANT IS ORDERED NOT TO contact family members or acquaintances of the protected person(s).

---

**DOMESTIC ABUSE, DATING VIOLENCE, STALKING OR SEXUAL ASSAULT**
ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

---

____ ☐19.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be ordered to pay the following:

☐ all court costs                    ☐ attorney fees

☐ evaluation fees                  ☐ expert witness fees

☐ cost of medical and/or psychological care for the petitioner, the minor child(ren), alleged incompetent, and/or other protected person(s) necessitated by the domestic abuse, dating violence, stalking or sexual assault.

____ ☐20.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be ordered to seek professional counseling, complete a court-monitored domestic abuse intervention program, submit to a medical evaluation and/or submit to a mental health evaluation.

Docket No. _22991_

☑ 21.   Other:

**NO WITNESS, OTHER THAN
THE PARTIES, MAY BE
CALLED AT THE HEARING
WITHOUT PRIOR
APPROVAL OF THE COURT**

IT IS FURTHER ORDERED THAT DEFENDANT show cause on _2/24/22_ *(month/day/year)* at _1:30_ o'clock _P_. M. in Courtroom No. _203_ of the _Civil District_ Court located at _421 Loyola Avenue_ in _New Orleans_ La., why the above Temporary Restraining Order and other relief requested should not be made Protective Orders.

| Date of Order | Time of Order | Order effective through 11:59 PM on | SIGNATURE OF JUDGE |
|---|---|---|---|
| _2/3/22_ *month/day/year* | _4:11_ ☐AM ☑PM | _4:02_ *month/day/year* | ☑ Order issued *ex parte* ☐ Order issued after notice and opportunity for hearing given to defendant  *Judge Lori Jupiter*  **PRINT OR STAMP JUDGE'S NAME** |

NOTICE: C.C.P. Article 3603.1 - Any person against whom such an order is issued shall be entitled to a court-appointed attorney if the applicant has likewise been afforded a court-appointed attorney.

---

**NOTICE TO DEFENDANT - VIOLATION OF ORDER:**

PURSUANT TO LA. R.S. 14:79, A PERSON WHO VIOLATES THIS ORDER MAY BE ARRESTED, JAILED, AND PROSECUTED.

PURSUANT TO LA. R.S. 13:4611 AND LA. CH. C. ARTICLE 1571, A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF NOT MORE THAN $1,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS 6 MONTHS, OR BOTH, AND MAY BE FURTHER PUNISHED UNDER CRIMINAL LAWS OF THE STATE OF LOUISIANA. THIS ORDER SHALL BE ENFORCED BY ALL LAW ENFORCEMENT OFFICERS AND COURTS OF THE STATE OF LOUISIANA.

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

LPOR 1
v.14

Docket No. _22991_

---

**NOTICE TO DEFENDANT – FIREARM <u>POSSESSION</u> (*Domestic abuse or dating violence ONLY*):**

AS A RESULT OF THIS ORDER, IT MAY BE UNLAWFUL FOR YOU TO POSSESS, RECEIVE, SHIP, TRANSPORT OR PURCHASE A FIREARM, INCLUDING A RIFLE, PISTOL, OR REVOLVER, OR AMMUNITION, FOR THE DURATION OF THIS ORDER PURSUANT TO STATE AND/OR FEDERAL LAWS. See below.

*If you have any questions whether these laws make it illegal for you to possess or purchase a firearm or ammunition, consult an attorney.*

<u>Federal law: 18 U.S.C. 922 (g)(8)</u> prohibits a defendant from purchasing, possessing, shipping, transporting, or receiving firearms or ammunition* for the **duration** of this order if the following conditions apply:

- Protected person(s) relationship to defendant is checked in Box **A** on page 2 of this order
  **AND**
- Notice and opportunity for a hearing provided
  **AND**
- **EITHER** Judicial finding of credible threat, <u>OR</u>
  Certain behaviors are prohibited (item 1 on page 3 of this order is initialed)

*\*Under 18 U.S.C. 921 the term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. The term "ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.*

---

**NOTICE TO DEFENDANT – FIREARM <u>TRANSFER</u> AND <u>SUSPENSION OF CONCEALED HANDGUN PERMIT</u>**
**(*Domestic abuse or dating violence ONLY*)**

IF A <u>PROTECTIVE ORDER</u> IS ISSUED AGAINST YOU, YOU MAY BE REQUIRED TO TRANSFER ANY AND ALL FIREARMS OWNED OR POSSESSED BY YOU AND SURRENDER YOUR CONCEALED HANDGUN PERMIT. AS YOU MAY ALSO BE REQUIRED TO STATE UNDER OATH THE NUMBER OF FIREARMS YOU POSSESS, THE TYPE AND LOCATION OF EACH AND COMPLETE A FIREARMS INFORMATION FORM VERIFYING SUCH, BRING THIS INFORMATION TO THE HEARING. THE INFORMATION MAY BE REQUIRED EVEN IF YOU TRANSFERRED THE FIREARMS PRIOR TO THE TRANSFER ORDER.

<u>Louisiana law: C.Cr.P. Art. 1001 et seq.</u> requires the transfer of all firearms owned or possessed and the suspension of a concealed handgun permit:

- When a person is subject to a permanent injunction or a protective order pursuant to a court-approved consent agreement or pursuant to the provisions of R.S. 9:361 et seq., R.S. 9:372, R.S. 46:2136, 2151, or 2173, Children's Code Article 1570, Code of Civil Procedure Article 3607.1, or C.Cr.P. Articles 30, 320, or 871.1.
  **OR**
- When a person is subject to a Uniform Abuse Prevention Order that includes terms prohibiting possession of a firearm or carrying a concealed weapon.

---

**FULL FAITH AND CREDIT pursuant to 18 U.S.C. § 2265**

The issuing court certifies that it has jurisdiction over the parties and the subject matter under the laws of the State of Louisiana; that the defendant was given reasonable notice and an opportunity to be heard sufficient to protect the defendant's right to due process before this order was issued; or if the order was issued *ex parte*, the court ordered that the defendant be given reasonable notice and an opportunity to be heard within the time required by the laws of the State of Louisiana, and in any event, within a reasonable time after the order was issued, sufficient to protect the defendant's due process rights.

**THIS ORDER SHALL BE PRESUMED VALID AND ENFORCEABLE IN ALL 50 STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, U.S. TERRITORIES, AND COMMONWEALTHS.**

NO WITNESS, OTHER THAN
THE PARTIES, MAY BE
CALLED AT THE HEARING
WITHOUT PRIOR
APPROVAL OF THE COURT

_____
SIGNATURE OF JUDGE

_____Judge Lori Jupiter_____
PRINT OR STAMP JUDGE'S NAME

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

Docket No. _22 997_

| NOTICE TO LAW ENFORCEMENT |
|---|
| Pursuant to La. R.S. 14:79, the crime of violation of protective orders – you shall use every reasonable means, including but not limited to immediate arrest of the violator, to enforce this order.  Further, you shall at a minimum issue a summons to the person in violation.<br><br>Pursuant to La. R.S. 46:2140(A), if you have reason to believe that a family or household member or dating partner has been abused AND the abusing party is in violation of this order, you SHALL immediately arrest the abusing party.<br><br>If the expiration date of this order falls on or within five (5) days of the conclusion of a declared state of emergency, this order/injunction shall be enforced throughout that time period. |

DEFENDANT WAS SERVED AT CLOSE OF HEARING.

Date _____     Clerk _____

FAXED or ELECTRONICALLY TRANSMITTED TO LOUISIANA PROTECTIVE ORDER REGISTRY

Date _____     Clerk _____

## FAX COMPLETED ORDERS TO 888-568-4558

Copies to:  1) Court file   2) Petitioner/protected person(s)   3) Defendant   4) Chief Law Enforcement Official of the parish where the protected person(s) resides  5) Louisiana Protective Order Registry.

LPOR 1
v.14

**VA Department of Veterans Affairs**

# REQUEST FOR MEDICAL DOCUMENTATION

1. DATE  03/11/2021

2. Dear Health Care Provider

Your patient  Huayang Sonny Cui  has requested an accommodation *(describe the requested accommodation here)*

Please see attached sheet!

because of functional limitations caused by his/her disability. Since the disability is not visible, and we do not have documentation on file, I would appreciate information that would allow me to determine whether this individual has a disability covered by the Rehabilitation Act of 1973. The information that you provide will also help me determine whether the requested accommodation will be effective in eliminating or minimizing the limitations caused by the disability.

3. The key duties that your patient has advised that he/she is unable to perform, or benefits and privileges of employment that he/she is unable to enjoy are.

4. I have been given the responsibility for determining if your patient is covered by the Rehabilitation Act. I cannot proceed until I receive the requested information. If you have any questions, please contact me at the telephone number below.

5. MY NAME IS  Michelle Hawkins

6. MY PHONE NO. IS  (318)-466-4443

7. MY TITLE IS  Supervisory HR Specialist

8. Please return this form and the requested information to me at:
   *(Enter complete mailing address and fax number.)*

9. **Please do NOT provide a copy of the patient's complete medical history.**
The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services. At present, we only need the following information:

(a) the nature, severity, and duration of the impairment:  15 months

(b) one or more of the activities the impairment limits (walking, reaching, breathing, etc.):  Pt states he experienced intense fear & anxiety & had difficulty focusing on his job duties, where his first line supervisor failed to follow medical doctor's restriction of contact. Pt states his 1st & 2nd line supervisors have a recent history of bullying him & being dishonest to him.

VA FORM 0857e
SEP 2013

(c) the extent or degree to which the impairment limits an activity:

The impairment moderately to severely limits his activity if his 1st & 2nd line supervisors do not cease communication with him. No other functional limitations.

(d) the reason the individual requires accommodation or the particular accommodation requested, and/or

I covered it for purpose of confidentiality !
                                    GL  03/11/21

(e) how the accommodation will assist the individual in applying for a job, performing the essential functions of the job, or to enjoy a benefits of employment.

Pt will have a sense of safety to work in a healthy & non-toxic work environment,

| 10. NAME OF HEALTH CARE PROVIDER | 11. SIGNATURE OF HEALTH CARE PROVIDER | 12. DATE OF SIGNATURE |
|---|---|---|
| Angele LaFleur  DO | | 3-11-21 |

13. MEDICAL/PROFESSIONAL LICENSE CATEGORY AND NUMBER

DO.000329

Addendum: ① I recommend no verbal or written communication by 1st or 2nd line supervisors with my patient.

② written communication with All management will be lifted upon completion of agency transfer.

③ VA approval of transfer agency is correct

This form should be retained separately from the employee's Official Personnel Folder.

VA FORM 0857e  SEP 2013, back



April 6, 2021

Huayang Cui
804 Joe Yenni Blvd Apt 14
Kenner LA 70065

**Metairie Veterans - Internal Med**
2005 VETERANS MEMORIAL BLVD
METAIRIE LA 70002-5320
Phone 504-836-9820
Fax 504-846-9608

To whom it may concern,

Huayang Cui is under my medical care. Please allow no verbal or written communication between Mr Cui and the assistant chief. If the patient has to interact with that staff member his anxiety flares. Thank you.
Sincerely,

Angele LaFleur D.O.

RE: Cui, Huayang -- MR#: 10184388 AC212586624

Page 1 of 1

Psychology Service Fact Finding
Mr. Cui
Oct/Nov 2021

Fact Finding concerning an allegation by Huayang S Cui of a Hostile Work Environment within the Psychology Service, Southeast Louisiana Veterans Health Care System.

Please respond/answer the below questions/prompts being as specific and detailed as possible. Please send this completed form back to me (Dr. Konur) by COB Monday 11/1/2021.

1. Describe your current role, duties, and responsibilities.

- *According to my job description, the chief essential function of my job duties is to perform neuropsychological tests and score these measurements under the supervision of a neuropsychologist. However, I believe since the previous neuropsychologist retired about 4 years ago, Dept. supervisors did not fill in that position. Consequently, I did not have essential job duties to perform. I remember I did some years of research and program evaluation under the supervision of Mr. Garry Laborde, while my previous neuropsychologist hired a contract psychometrician to work. Because of my conscientious effort to insert research component into my assigned job duty to justify this task as program evaluation and the fact Mr. LaBorde was flexible to allow me to utilize my research training and skills into this task of program evaluation, I believe I was very successful with the outcome of this program evaluation and I received two excellent performance ratings consecutively under the supervision of Mr. Gary Laborde. Please see attached copy of my performance ratings and a copy of my job descriptions for reference.*

- *So, I consider performing research and program evaluation as also essential part of my job duties. However, I do not believe Dr. Slaton has ever assigned me to work under the supervision of any neuropsychologists, nor do I believe she has assigned me to perform any type of research or program evaluation duties like Mr. LaBorde did. So, I believe it is a false claim for Dr. Slaton to state the reason to offer me alternative reasonable accommodation is to perform essential function of job duties. Please see Dr. Slaton's duties*

1

*assignment sheet. Please note on that sheet there is Dr. Avery Buras, who claimed to me he has knowledge and skills regarding psychological assessment. However, I do not have any ideas if he has the qualification of a neuropsychologist, nor was I ever assigned to work with him for any task of psychological assessment since I returned to work in Dept. of Psychology in March 2021 So, I see this type of arrangement as something his name could appear on paper to make it look like I have been assigned with job duties of psychological assessment under his supervision.*

*Another type of psychological assessment work assigned to me was to administer and score psychological assessment instruments to VA Police, which I did perform a few under the supervision of Dr. Laurel Franklin. I believe I completed this task very well. Because Dr. Jones and Dr. Slaton have decided to take away my individual office, and assigned me a cubic area on the 4th floor, and psychological assessment administered to VA Police on the first floor, I know I did not have an individual office to sit in my individual office to score those police's test data. I saw their decision to take away my individual office as hostile decision to treat me differently from my co-workers of similar situation. Besides, Dr. Slaton did not even count this part of work in my mid-year performance evaluation. Instead, she counted others that were not part performance data and she stated I needed improvement. So, I truly believe I received reprisal from Dr. Slaton and there is absolutely no way I will be able to receive fair performance evaluation from her. This is only one of many examples Dr. Slaton has been involved in doing harms to me. There is absolutely no sense of professionalism I will receive from her at all. And my family doctor described this type of work environment as "toxic".*

*Another two types of job duties I have been assigned are 1) make VA Video Connect Presentation to veterans 1) call patients for their missed appointments, which belongs to non-essential (administrative) type of job duties.*

2

2.  You have made a claim of hostile work environment. Describe specifically the circumstances that you feel are creating a hostile work environment.

*Because my family doctors keep a good record of my experience of occupational illnesses on the job ever since I was injured in Dec. 2016, by the time Dr. Slaton issued me a work order to return to work at Dept. of Psychology in Feb. 2021, both my family doctors have already issued medical recommendations of no contacts (verbal or written) with my first and second line supervisors – Dr. Karen Slaton and Dr. Kenneth Jones. However, I am sure neither Dr. Slaton nor Dr. Jones would agree or even respect my family doctors' medical recommendation. Thus, I have been sent back to a hostile work environment. Many detailed events of harms have been reflected in my Step II and Step III Union Grievances. Besides, when my family doctor found out  Dr. Laurel Franklin was also involved in doing harms to my health and my employment, she did not hesitate to issue another medical recommendation to have no contact between me and the Assist. Chief – Dr. Franklin. Because Dr. Slaton was assigned as my first line supervisor at the beginning of Year 2018, it will take me a long time to write down every bit of her inflicted harm to me for both my health and my employment, not to mention other Psychology supervisors have been involved in doing harm to me too.  So, if you believe I should write down every bit of harm Dr. Slaton did to me since she took over the role of my supervisor, I am requesting extension of time so that I will have ample of time to write.*

3.  Who, if anyone, do you feel has been involved in the creation of a hostile work environment (Names only)?

- *1. Dr. Karen Slaton, 2. Dr. Laurel Franklin. 3.It is my belief Dr. Desirae Vidaurri was made to follow wrong orders from Dr. Franklin to assist creating a hostile work environment for me, even though I believe she is a follower. Dr. Vidaurri disclosed to me Dr. Franklin is her first line supervisor.  Whenever she has independent thought and decision-making power, she appears reasonable. So, I truly believe she received improper work order from Dr. Franklin to be involved to do harms. I mentioned to Dr. Vidaurri through e-mail that if she and I were to work in a private setting, our work relationship would be fine.*

3

*Because this fact-finding decision was made by Dr. Kenneth Jones, Chief of Psychology, I am unable to disclose any other names of officers within Dept. of Psychology or outside Dept. of Psychology who are above Dr. Slaton and Dr. Franklin, whom, I believe are also involved in creating a hostile work environment for me. I do believe there is systemic racism in our Dept. of Veterans Affairs. Besides, I do not believe there is any single VA Office effective or efficient to cease systemic racism.*

4. For each person named in #3, list specific examples of actions and/or behaviors that you feel have contributed to creating a hostile work environment.  Include dates, witnesses and as much detail as possible when describing the examples.

- *I believe there are three time period both Dr. Karen Slaton and Dr. Laurel Franklin joined hands to do harms to my employment and/or health. The first time was after I protested my job assignment of scoring other interns and post-doctors' psychological assessment and my performance evaluation rating (no above-average rating in any content areas) about three years ago, while Dr. Franklin served as Acting Chief of Psychology. In retaliation, Dr. Franklin and Dr. Slaton secretly downgraded my job position from GS-9 to GS-7 with the assistance from Vision 16 HR Chief of Classification - Ms. Laura Bean. I remember I complained that downgrading my position as whistle-blowing retaliation against my participating in protected activities. Mr. Eric Oleson, the Assist Chief of Social Work Service did the fact-finding. It occurred a number of years ago. However, Mr. Olson, to this date, he did not even release a copy of his fact-finding report to me. This morning, I wrote him an e-mail requesting release of information to me. He has not responded to me yet. I believe if I will have a chance to analyze the information collected by Mr. Oleson, it would be very helpful to gain understanding those reasons why Dr. Slaton and Dr. Franklin wanted to do harms to my employment, and what are their underlying motives of doing harms to me.  I am requesting your office represent me to request a complete copy of Mr. Oleson's fact-finding report because it is critically important information to understand motives why supervisors want to do harms to me. Mr. Oleson should not keep me in the dark for not releasing me a copy of fact-finding report.*

4

*The second time was Dr. Slaton assigned me a research assistant job duty of data entry that requires Ph.D. level training to understand. The name of the test is SCID. Besides, I believe Dr. Franklin provided Dr. Slaton with possible false witness statement regarding three other clinicians were able to process SCID data entry within an average of 20 minutes. When EEO investigator asked what are the names of those three clinicians who were able to process SCID data entry in twenty minutes, Dr. Franklin acted like she was confused by the questions and, of course, she was unable to answer the question directly, because I believe she fabricated data herself.*

*Consequently, Dr. Slaton and another Psychology supervisor joined hands to fail me in professional service, professional development and customer service performance evaluation partly because Dr. Franklin's fake statement. I believe this is their third time both Dr. Slaton and Dr. Franklin joined hands to do employment harms to me. This time, their strategies of doing harms to my employment is somewhat different, because, like what I described before, they have involved another clinician - Dr. Vidaurri, a clinician who does not have a history of doing harm to me before.*

*Because of the limited time I have, and many events occurred, I am requesting extension of my time to write, your kind and prompt approval of my request of extension will be truly appreciated!*

**Huayang Sonny Cui, Psychology Technician**
**Dept. of Psychology**
**New Orleans VA**
**Date: Nov. 1, 2021**

Supplemental Questions:

1. List the three most egregious actions that Dr. Slaton, Franklin, Jones and/or Vidaurri have specifically done to require you to have a medical provider

write a note of recommending no contact? You may list 3 actions for each of the above-named persons. Again, I am asking what specific actions hthey engaged in. I am not asking about your personal medical history. Also, I am aware of your statement concerning Dr. Slaton and Dr. Franklin and your position being downgraded, and regarding the SCID data entry.

*Response: If you have a chance to review my family doctor's medical recommendation based on my self-report, I charged Dr. Kenneth Jones and Dr. Karen Slaton with being dishonest and bullying me in our workplace. And my family doctors trust my self-report and made her recommendation of <u>limiting my patient from working with his first and second line supervisors on 11/13/2019.</u>*

*For Dr. Kenneth Jones, following are facts regarding my question of his integrity as Chief of Psychology*

*1) <u>Dishonesty</u>*

*Dr. Jones said, "after we had provided Mr. Cui with twice the training given other staff who were administered the SCID (he was only entering data, not administering or interpreting the data), we felt that was sufficient. He also had been told to alert his supervisor if he had challenges, which he did not until he missed the deadline." "He was given a clear task with reasonable deadlines. Besides, he was also provided with fairly deep training." "He was suggesting that these duties are beneath his grade and level of preparation". "He was instructed to enter up to 15 protocols per week into the data base." "I estimated that Mr. Cui had received many hours of individualized training on the SCID." "On the other hand, I knew others could perform this work in a few hours" "I know he requested a grade increase and a transfer to a research position." I "know that Drs Christopher Parkinson and Amanda Raines provided training to Mr. Cui on the SCID." "My understanding was that Mr. Cui actually had approximately double the training to staff who were administering the SCID." "We estimated that others could conduct this work in less than one eight-hour day."*

*My questions are, who provided me twice the training? Dr. Jones is my second line supervisor, how did he know I received double the training? If Dr. Jones believes I received training on understanding the SCID test, how come Dr. Slaton denied I received training on SCID test? What I suggest is investigator contact Dr. Raines to gather detailed information regarding the number of hours of training I received regarding SCID data processing and request Dr. Raines to provide me and you with dates and hours of training time I received so that you may have an idea how much training I received.  It is my belief, perception and experience SCID data processing job assignment is supervisors' joint efforts to use unreasonable job assignment to bully me in my workplace, which, I believe, deserves focused and thorough investigation seeing detailed information. Besides, I am requesting investigator to provide me with respondents' responses so that I will be given a chance to rebuttal their responses particularly on 1) their claimed motive to downgrade my position and 2) their responses to job assignment of SCID data processing.*

## 2) *Bullying Behaviors*

*To me, Dr. Jones not only is not an honest supervisor, I also perceive him as having no problem to bully me in my workplace. I believe he knew SCID test is rather new and I went to graduate school many years ago, and I did not have an opportunity to receive content training for this new test. However, when I requested to receive training to understand this test, he firmly denied my request. Besides, both Dr. Slaton and Dr. Jones denied my request of one week training to observe how other Psychology Technicians are able to process 10 SCID data and perform scoring for other psychology interns and post-docs like me, while DVA and our AFGE Union has a clear contract language whenever there is some type of re-assignment of job duties or new job duties, supervisors are responsible to provide training to me. In my current case, I not only did not receive sufficient data processing training on SCID test, I was not even given the answer keys to that data processing task, nor did I receive any clear written instruction of procedures of entering SCID data. So, I believe it is completely wrong for Dr. Jones to accuse of "missing the deadline", whereas the fact is that I received an improper work order from her to perform a task without sufficient*

7

*knowledge or material readiness. So, I perceive Dr. Jones' decision to deny my request of training as one of the bullying behaviors.*

*Secondly, I perceive Dr. Jones made attempts to take away my individual office as another bullying behavior. My office was returned to me by Dr. Joseph Constans a few years ago, while he was the Acting Chief of Psychology. Dr. Jones wrote me an e-mail, stating I was qualified to work home in order to take away my individual office. He also stated my work was pretty solid as the reason I was qualified to work home. However, I do not trust what he offered to me, nor did I trust his explanation that interns and post-docs do not have individual offices to work as reasons. What I believe was his intentional and deliberate effort to treat me differently from my fellow co-workers. Because the end result was not to assign this office to interns or post-docs, this office was subsequently assigned to Ms. Gregory Washington, the Administrative Officer. What I believe he has intention to isolate me from my co-workers so that I will not receive social support from my fellow co-workers, particularly from those co-workers in the mainstream culture. That is why if you visit my work area now, you will see I have been assigned to a cubic area, not an individual office. Besides, all staff members assigned to work in cubic area are staff of colors – 100%. This is very much like racial segregation - minority cubic area. This is the second time I have been receiving this type of adverse treatment in condition of employment – office space and office location. The first time was when I was working under the supervision of Mr. Garry LaBorde almost five years ago. My question is if Dr. Jones stated the reason I was qualified to work home was because my work was solid, how come Dr. Jones and Dr. Slaton joined hands to fail me in three content areas – customer service, professional service, and professional development? This is another example to illustrate Dr. Jones was both dishonest and bullying to me. I truly believe he does not have feelings of guilt and/or shame to bully me as an Asian Minority staff member with an active disability, not to mention my disability was completely caused by inappropriate supervision.*

*Besides, when I requested to have minority staff member as my supervisor, he did not hesitate to write to me stating my request was illegal, because I was requesting racial segregation. Now he believes requesting a minority staff member as my supervisor is illegal, how come he does not understand assigning me to work in a cubic area with all minority staff members around is illegal? If*

8

*that is not racial segregation, what else is it? So, I believe Dr. Jones employs double standard regarding cultural diversity inclusion. I firmly believe both Dr. Jones and Dr. Slaton are culturally unfair supervisors. I truly believe they are not qualified to supervise me as a minority staff member. I feel very shameful to work with these supervisors.*

### 3) *Take Unlawful Personnel Action Against Me*

*Dr. Jones stated, "Mr. Cui appealed his performance rating. I had reviewed the data and the information and I had discussed the plan to provide Mr. Cui with accurate feedback on his performance. I considered his concerns, and declined to revise the rating".*

*The fact is Dr. Jones co-signed Dr. Slaton's rating of my performance on the same day Dr. Slaton assigned me the rating, indicating it was joined efforts between Dr. Slaton and Dr. Jones to do employment harms through taking wrongful personnel action by using unsubstantiated performance data reflected in Dr. Slaton's comment on my performance as well as Dr. Jones' many false statements disclosed during VA ORM investigation. Dr. Jones was involved in not only bullying me through taking unlawful personnel action against me and through unfair job duty assignment inconsistent with DVA/AFGE Union contract language regarding job duty re-assignment, I firmly believe Dr. Jones also violated DVA HR Performance Appraisal Standard – performance goals must be understandable, realistic, attainable, and challenging. I perceive Dr. Jones and Dr. Slaton's job assignment of SCID data processing and subsequent performance evaluation as grave EEO issues Therefore, I truly believe both supervisors have engaged in unlawful activities in violation of civil right laws.*

*Lastly, Dr. Jones openly stated to me during an EEO mediation meeting in May 2019, he "planned to have me on disability leave." And I responded to him directly, "No, you can't. You are not my doctor." I am requesting investigator ask him this question to see if he is willing to admit. What I have clearly seen is their joined effort of using inappropriate supervision including unfair job assignment, adverse treatment of condition of employment such as taking away my individual office and unfair performance evaluation to bully a minority staff*

9

*member with an active disability, causing me to continue to experience occupational illnesses on the job due to working in a hostile work environment.*

*When my family doctor collected all the information, she decided to recommend "limiting my patient from working with his 1st and 2nd line supervisors" on the condition VA ORM or any other VA offices have completely failed to take any corrective action against Dr. Slaton and Dr. Jones due to systemic racism prevalent across federal government agencies.*

*When our DVA decided to take no action to protect me as a staff member participating in EEO protests, VA management is, in fact, protecting supervisors who have been engaging in unlawful activities against me. That is something when Secretary Robert McDonald was in charge, he would not tolerate, because, supposedly, there shall be zero tolerance for whistle blowing activities. Otherwise, who has the courage to file complaints and expose abuse of authority, gross mismanagement or substantial danger to public employees and public safety.*

*For Dr. Karen Slaton, my first line supervisor, following are three areas of her chief involvement to do harms to me:*

*1) Dishonesty*

*Following are Dr. Karen Slaton's sworn statement on VA ORM investigation*

*"Mr. Cui received training on numerous occasions on data entry. Observing peers would add no additional training."*

*Again, no specifics on who, which date, number of hours of training on SCID data processing. Notice similar statements were made by Dr. Jones and Dr. Slaton, no specifics of training data. Besides, if I already know how to do it, what is the reason I request training? Dr. Slaton admitted she denied my*

10

*request of one week of observational training from my psychology technician peers.*

*"Mr. Cui often missed deadlines for entering data. In an attempt to determine how long data entry might take. Dr. Laurel Franklin asked psychologists or psychology trainees to enter this data and time their data entry. The average time was calculated as approximately 15 minutes (per my memory). Mr. Cui was assigned 10 data sets each week which allowed much more than 15 minutes per data set. There was no training to obtain beyond what he had been provided previously."*

*Here, Dr. Slaton affirmed Dr. Franklin communicated with her the average time to enter this data was about 15 minutes. However, if I retrieve that piece of writing from Dr. Franklin through memory, I remember Dr. Franklin stated the average time was 20 minutes. Assuming 20 minutes is their standard criteria for processing SCID data. So, for ten sets of data, the total time for standard criteria of processing would be 20 minutes x 10 which is equal to only 3.33 hours.*

*How come supervisors were so generous to give me a week to process? Besides, if that is the standard criteria, what is the problem Dr. Franklin acted like she did not understand what the ORM investigator asked her regarding the names of three clinicians. Did she really not understand investigators' questions?  So, from all the reactions and different statements made from Dr. Jones, Dr. Slaton and Dr. Franklin, it is my position statement these three supervisors joined hands to do employment harms to me through setting up an unattainable goal. Because, to this date, neither ORM investigator nor I have any awareness of the names of those three clinicians who are able to do that, not to mention any possibility I will be given a chance to observe these three clinicians' actual performance regarding their processing speed. So, neither ORM investigators nor I have any first-hand information regarding these three clinicians' data processing speed Without the information, the data processing criteria came from Dr. Franklins' own words – which I believe is a fabrication of performance data.*

11

*There was one time Dr. Franklin disclosed to me their research team planned to move to work in Dept. of Research. I know, in my heart, they planned to move there so that they could tell ORM Dept. of Psychology do not have staff members to do research, because of my complaint that I was not allowed to see patients or not to do research, which is the essential functions of my jobs. So, it was very clear these three supervisors attempted to exclude me from having a chance to do research, when they did not have plan to fill in the neuropsychologist position. It that is not on-the-job discrimination against a minority staff member on averse treatment in condition of employment, what else is it?*

*2) Bullying Behaviors*

*Dr. Slaton responded during ORM investigation, "Mr. Cui asked for assignment such as seeing Veterans and conducting research. Both of these assignments are outside the scope of a psychology technician".*

*So, I see her statement as both a dishonest one as well as bullying behavior to me through not assigning me to perform essential functions of my job duties by hiring a new neuropsychologist, or connecting me to a non-hostile researcher from Dept. of Research or Dept. of Psychology And I believe seeing patients and working with a neuropsychologist is my chief essential functions of my job duties. Besides, carrying out research and program evaluation are also my essential functions of job duties. And I saw her previous action of assigning me to score data from other interns and post-docs and not assigning me to see patients and administer test data myself as bullying behaviors of adverse treatment in the condition of employment, which is an EEO issue, Besides, I see their decision of assigning me to process SCID data without getting myself ready, and their attempt to use 20 minutes as standard processing time as bullying behaviors to strip me of equal employment opportunities of performing essential job duties. Please see a copy of my job description for reference.*

*Now, after the investigator reviews my job description, if the investigator believes what I stated is true and what Dr. Slaton stated is not true and investigator agreed with my position statement regarding the scope of job*

12

*duties, then, I truly believe Dr. Slaton is not only dishonest to me, but also dishonest to VA ORM investigator under oath.*

*Dr. Slaton also responded during ORM investigation, "While I do not know why he makes these complaints, I do believe that he suffers from a mental illness that results in extensive paranoia".*

*Here is my situation, Dr. Jones threatened to have me on disability leave. Now, Dr. Slaton stated I suffers from a mental illness that results in extensive paranoia. So, I truly believe both Dr. Jones and Dr. Slaton have made intentional and deliberate efforts to prove to someone I have been mentally ill to the point that I cannot perform essential functions of my job duties, making me believe there may be joint efforts among Dr. Jones, Dr. Slaton and Dr. Franklin to prove to someone – VA Office of General Council that I have been mentally ill to the point I am unable to perform essential functions of my job duties. However, my position is they have never assigned me to perform essential functions of my job duties ever since Mr. Trump became former US President, who believes every Chinese student is a spy. That is another EEO issue of discrimination by national origin. If I am mentally ill, then, my mental illness has been caused by their practice of discrimination.*

*3) Take Unlawful Personnel Action Against Me – Performance Evaluation*

*Please see copy of Dr. Slaton and Dr. Jones' performance rating of me for Year 2018-2019*

*"He missed deadlines this year". "He complained that this time was recently decreased from three days."*

*My response, I did not miss deadlines. This is her opinion. It is not the fact. The fact is she issued me an improper work order. And this was not her first time to do so. The first time she issued an improper work order was shortly after she was assigned to be my first line supervisor, and she asked to perform a job duty, before I received a pass code to enter CPRS. Subsequently, rumor spread about stating I did not want to perform assigned job duties, Dr. Vigil may still remember that event, even though I notice she sides with Dr. Slaton.*

13

*Besides, I did not complain the data processing time was decreased from three days to half days. I did not have any verbal communication with her. If I complained it through e-mail, Dr. Slaton should produce material evidence to prove it.*

*What I remember she used to allow me to have 16 business hours to complete the task. I saw her shortening the processing time as an attempt to fail me too. Because it is so easy for me to not read her e-mail in 4 hours, not to mention in those 4 hours I need to complete the assigned job duties sent by her within the last 4 hours.*

*I always questioned her integrity from very beginning including creating employment problem for her direct supervisee – Dr. Melissa Bonnell for participating in my EEO protest activities. I believe my work with her is more like she has been playing a game with me, because honesty is of no value to her.*

*For Dr. Laurel Franklin, Assist Chief of Psychology*

1) <u>*Take Unlawful Personnel Action Against Me*</u> *– Downgrading My Position from GS-9 to GS-7 to restrict me from having opportunity to engage in research activity full-time, and restrict me from having patient contacts as part of essential functions of my job duties, while she functioned as the Acting Chief of Psychology. I believe this was a joined effort between Dr. Franklin and Dr. Slaton to do employment harms to me. This unlawful attempt was corrected by two administrators at Vision 16. However, the motive to harm me in creating adverse condition of employment was very clear for the purpose of limiting me from having opportunity to do research or having patient contact.*

2) <u>*Dishonesty*</u>

*Providing Dr. Slaton with questionable data processing speed information that three clinicians were able to process SCID data set in 20 minutes, partially resulting in Dr. Slaton and Dr. Jones' joint decision to fail me in Performance*

14

*Evaluation – professional service in 2018-2019. When questioned by VA ORM investigator, Dr. Franklin appeared confused and was unable to provide concrete information to ORM investigator. To prove my perception and belief that Dr. Franklin was dishonest with providing SCID data process time, I believe investigator must receive three real names from Dr. Franklin. Then, to create an environment in which investigator will be able to observe each of those three clinicians' processing time for SCID data entry. I sincerely requested two of my previous investigators to pay on-sight visit and to gather the first-hand information, which they failed to do so. I do not believe this investigator will have the time or will be given permission to carry out this investigative task. Under this condition, my charging statement is not a fact, but my strong belief only. However, because Dr. Franklin's previous involvement in downgrading my GS level without my agreement coupled with this activity, I no longer trust her anymore.*

3) *Joined Harms between Dr. Slaton and Dr. Franklin in taking personnel actions of performance counseling letters on March 10 and March 26. Please see my document Slaton counseling file.*

*In Dr. Slaton's performance counseling letter on March 10, 2021, she wrote "you did not report to a previously scheduled 2:30 PM meeting with Dr. Franklin".*

*So, I was completely lost regarding this charging statement, which did not say who previously scheduled 2:30 pm meeting with Dr. Franklin, me or Dr. Franklin? If Dr. Franklin pre-scheduled the meeting, did Dr. Franklin inform me? If she did, when did she inform me? I know Dr. Slaton always wrongfully accused me, which I have proved to previous investigators quite a few times, although no corrective actions have ever been taken to my knowledge. However, when Dr. Franklin and Dr. Slaton joined hands to do harms to me, I have no ideas if Dr. Slaton wanted to harm me intentionally or Dr. Franklin reported to Dr. Slaton the wrong event. My family doctors already issued no verbal or written contact by Dr. Slaton, and she just ignored my family doctor's medical order to do harms to me. My guess is the investigator does not have time to find out what happened to this event either, because it takes time to gather information in order to dig out the facts.*

15

*In Dr. Slaton's performance counseling letter on March 26, 2021, she wrote, "On Friday, March 26, 2021 at 8:00 am, you missed the rescheduled practice session with Drs. Franklin and Vidaurri. You did not cancel these mutually agreed upon meetings in advance."*

*Here, Dr. Slaton accused me of failure to cancel these mutually agreed upon meetings in advance by not having any evidences when I agreed to attend this meeting. I remember, by that time, I was very afraid to work with Dr. Franklin anymore, knowing the fact that Dr. Slaton and Dr. Franklin joined hands to do employment harms to me through repeatedly issuing me letters of performance counseling since March 10, 2021. I remember I have altogether received 4 letters of performance counseling during about one month time period, which was a direct violation of my family doctor's previous recommendations of no verbal or written communication by my first and second line supervisors. Not sure if the investigator is able to understand my feelings of workplace fears by now. It is my position statement that Dr. Jones, Dr. Franklin and Dr. Slaton joined hands to do employment harms to me, and this hostile action began with Dr. Franklin and Dr. Slaton's joint efforts to downgrade my GS level. Consequently, Dr. Jones participated in doing employment harms to me during the second and third rounds. During the third round, they involved 4th individual – Dr. Vidaurri.*

*Dr. Vidaurri's employment harms to me.*

1) *Dr. Vidaurri repeatedly disregarded my display to her that my family doctor has a new medical order of no verbal or written contact with the Assist Chief on April 26, 2021, and she wanted me to see her first line supervisor – Dr. Franklin. Mr. Gregory Washington is a witness of her behavior of not respecting my family doctor's medical recommendation. Because many times I communicated with Dr. Vidaurri, I cc Mr. Washington as my witness for this event.*

*Her second and third harms to me require lots of effort for me to prove, because it requires investigator's much time to investigate the details of my complaint before I will be able to prove that she was being used.  and I do not believe the investigator will have time to do it. Besides, her degree of*

*involvement in harming me is tiny. Generally speaking, it is my perception and belief she has been misused as an additional witness by both Dr. Slaton and Dr. Franklin to create a wrong image to HR and other management representatives that I am not a good employee. However, if this fact finder is granted additional time to do fact-finding on how she was being used to harm me, I will be willing to cooperate with investigation. But it will take time due to the fact, I do not know the conversation between Dr. Franklin and Dr. Vidaurri behind me. Not sure if it is worth spending time to investigate those matters.*

2) You stated that you believe, "There is systemic racism in our Dept. of Veterans Affairs, provide up to 3 specific examples that lead to this belief

*Yes. that is true. I believe systemic racism refers to systems and structure that have procedures or process that disadvantages me as a Chinese American minority staff member ever since Mr. Donald Trump became our previous US President. Systemic racism also refers to the unjust and discriminatory mistreatment of an individual (me) by its institution as a whole through unequal and intentional biases.*

*So, when this investigator reads fact-finding data I have submitted and reads this definition or systemic racism, it really helps explain what exactly it means by systemic racism. One thing I need to explain is what it means by "procedures or process". My understanding is this procedures or process is not our VA EEO investigative procedure or process or Union members' grievance policy and procedure. There is absolutely nothing wrong with either the EEO or Union Grievance procedures or process. Everything in print is very good and beautiful. It is the supervisors who will almost always not to follow the procedures or process in print and create their own procedures and process that create discriminatory mistreatment of me. So, it is majority supervisors' practiced procedures and process, it is a hidden procedure and process.*

*In order to simplify my explanation of how the system and structure have procedures and process that disadvantages me, I am using a very simple example just to assist my explanation – let me use Chain of Command.*

17

1) *Example one: When I encounter workplace discrimination and hostile work environment through Dr. Jones, Dr. Franklin and Dr. Slaton's improper supervision, my first reaction is move up my concerns to Dr. Randolph Roig, our Chief of Staff, hoping he will assist me to resolve my workplace EEO issues. However, ever since Feb. 2021. I have kept writing to him – Step II Union Grievance and other reports. What was his reaction? He did not respond to any of my workplace concerns except for one second review of my RA request which he sided with Dr. Slaton's alternative offer without realizing that alternative offer did not work and it got me ill. So, Dr. Roig, though part of the process and procedure, has supported my supervisors' wrongful mistreatment of me. So, it is my understanding Dr. Roig's procedure and process are 1) no response, 2) support wrong decisions made by my first and second line supervisors.*

2) *Example two: Now, let us move up to our chain of command – Agency Director – Mr. Rivera. Here is my workplace situation, I have been receiving workplace discrimination for about 5 years. I remember I encountered him twice in person for Step III Union Grievances. The first time was a few years ago, I complained about I have received a harassment reprimand. Well, Mr. Rivera heard my complaint at that time, and he did make a decision to remove that harassment reprimand from my personnel file, However, I followed up communicating with him, stating there was something wrong in the way it was written on Step 3 Grievance response paper, however, to this date, that issue was not resolved. According to that piece of paper, readers will have a false impression I admitted I was guilty of the charges, and I was willing to serve 6 month time for that harassment reprimand, which was never true. So, I hope this investigator will be able to see how this institutional process and procedures disadvantages me as a Chinese American minority staff member. Of course, I do not have the time to explain here why I believe my national origin is one of the reasons I have been receiving workplace discrimination. The second time was April this year, Mr. Rivera*

18

*denied my request of remedy to improve my work environment. So, it is obvious that I am unable to resolve my workplace issues at Step III Union Grievance with my agency Director.*

3) *Example three: I frequently encountered our HR staff members at New Orleans VA as well as a number of Vision 16 HR supervisors have been involved in doing wrong things, supporting my belief the system and structure have the procedures and process that disadvantages me. For instance, I have very serious concerns regarding Vision 16 HR Chief of Labor Relation – Ms. Donna Reesman's mishandling of my complaint of conflict of interest. I believe she intentionally altered my verbal statement disclosed to her over the telephone. Besides, I truly believe the way she supervised Ms. Michelle Hawkins and Ms. Neiletta Higgs are wrong. I truly believe they should be held, at least, partially accountable for EEO issues regarding mishandling of my RA matter, resulting in my staying in a hostile work environment, which frequently causes me ill.*

*So, I truly believe there is very severe institutional racism in our Dept. of Veterans Affairs. It is very sad, but that is the reality. I have used my real life experience to prove systemic racism exists in our Dept. of Veterans Affairs. I have only cited a few examples to illustrate.*

*(the end)*

19

FILED

2022 FEB -3 PM 3:42

CIVIL
DISTRICT COURT

| LOUISIANA UNIFORM ABUSE PREVENTION ORDER |
|---|

**Order of Protection**

Temporary Restraining Order

Docket No. **22 997**

Court: _____ Div.: _____

City/Parish **orleans**   State **Louisiana**

Filed: _____ Clerk: _____

---

**PETITIONER**

**Huayang   Sonny   Cui**
First   Middle   Last

**PETITIONER IDENTIFIERS**

**04/27/1959**
Date of birth

**Asian**
Race

Sex: Fe [ ]   Sex: M [X]

Protected person is: [X] Petitioner   [ ] Other(s)   List other(s) name & date of birth:

_____   _____

_____   _____

_____   _____

## V.

**DEFENDANT NAME AND ADDRESS**

**Kenneth   Jones**
First   Middle   Last

_____
Name of minor defendant's parent or guardian

Defendant's Alias: **work address**
**Room 104, J Tower, VA 2400 Canal St.**
No. & Street                          Apt. No.
**New Orleans   LA   70119**
City   State   Zip Code

**DEFENDANT IDENTIFIERS**

| SEX | RACE | DOB | HT | WT |
|---|---|---|---|---|
| M | White | 1958 ? | 5 | 150 |
| EYES | HAIR | SOCIAL SECURITY # | | |
| ? | black | ? | | |
| DRIVER'S LICENSE # | | | STATE | EXP DATE |
| | | | | |

**THE COURT HEREBY FINDS:**
That is has jurisdiction over the parties and subject matter, and the defendant has been or will be provided with reasonable notice and opportunity to be heard. Additional findings of this court are as set forth on the following pages.

**THE COURT HEREBY ORDERS:**
That the above-named defendant be restrained from committing further acts of abuse or threats of abuse, stalking or sexual assault. Additional terms of this order are as set forth on the following pages.

**EXPIRATION:**

This order shall be effective through 11:59 PM on

| **2/24/22** | (month/day/year) |
|---|---|

**ENFORCEMENT:**

This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265).

**WARNINGS TO DEFENDANT:**

Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (19 U.S.C. Section 922[g][8]). See further notice on page 6 of this Order.

**ONLY THE COURT CAN CHANGE THIS ORDER.**

LPOR 1
v.14

| LOUISIANA UNIFORM ABUSE PREVENTION ORDER |
|---|

| TEMPORARY RESTRAINING ORDER<br>Pursuant to: | | |
|---|---|---|
| ☐ La. R.S. 46:2131 et seq. (Domestic Abuse) | ☐ La. R.S. 46:2171 et seq. (Non-intimate stalking) | **46:2171 and 46:2181 valid for relationships in Box C below ONLY** |
| ☐ La. R.S. 46:2151 (Dating Violence) | ☐ La. R.S. 46:2181 et seq. (Non-intimate sexual assault) | |
| ☐ La. Ch. C. Article 1564 et seq. (Children's Code Domestic Abuse) | | |

PETITIONER ___*Huayang S. Cui*___  Protected person is: ☐ Petitioner ☐ other(s)

v.

DEFENDANT ___*Kenneth Jones*___

**The protected person(s) is related to the defendant as:** *(check all that apply)*

**A**
☒ 1. current or former spouse  *supervisory*
☐ 2. current or former intimate cohabitant
☐ 3. child, stepchild, or foster child
☐ 4. child of defendant's current or former intimate partner
☐ 5. protected person and defendant have a child(ren) in common

**B**
☐ 1. current or former dating partner
☐ 2. parent, stepparent, or foster parent
☐ 3. grandparent or other ascendant
☐ 4. grandchild or other descendant
☐ 5. child currently or formerly living with defendant

**C**
*Select ONLY if statute 46:2171 or 46:2181 is marked above*
☐ 1. stranger/no relationship
☒ 2. acquaintance

**D**
☐ **FINDING: Domestic Abuse or Dating Violence**
THE COURT FINDS THAT THE ALLEGATIONS PRESENTED CONSTITUTE AN IMMEDIATE AND PRESENT DANGER TO THE PHYSICAL SAFETY OF THE PROTECTED PERSON(S).

☐ **FINDING: Stalking**
THE COURT FINDS THAT THE ALLEGATIONS PRESENTED CONSTITUTE AN IMMEDIATE AND PRESENT DANGER OF STALKING.

☐ **FINDING: Sexual Assault**
THE COURT FINDS THAT THE ALLEGATIONS PRESENTED CONSTITUTE A SEXUAL ASSAULT.

**THUS, THE COURT ISSUES THE FOLLOWING ORDERS, WITHOUT A HEARING:**

**E**
☐ **The court orders interpreter services**   ☐ **The court orders the sheriff to provide criminal history records of defendant and/or witnesses**

**IT IS ORDERED THAT THE DEFENDANT BE SERVED WITH A COPY OF THIS ORDER.**

Docket No. 22. 991

---

### DOMESTIC ABUSE, DATING VIOLENCE, STALKING OR SEXUAL ASSAULT
#### ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

☑ 1. THE DEFENDANT IS ORDERED NOT TO abuse, harass, assault, stalk, follow, track, monitor, or threaten the protected person(s) in any manner whatsoever. This prohibition includes the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury.

☑ 2. THE DEFENDANT IS ORDERED NOT TO contact the protected person(s) personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication without the express written permission of this court.
Exceptions (if any): _____

☑ 3. THE DEFENDANT IS ORDERED NOT TO ~~come within~~ *100 yards* _(distance)_ of the protected person(s), without the express ~~written permission of~~ this court.
**DENIED**
Exceptions (if any): *Defendant cannot go within 100 yards of petitioner outside of the Workplace*

___ ☐ 4. THE DEFENDANT IS ORDERED NOT TO go within one hundred (100) yards of the residence, apartment complex, or multiple family dwelling of the protected person(s).

| No. & Street | Apt. No. | City | State | Zip Code |
|---|---|---|---|---|

___ ☐ 5. THE DEFENDANT IS ORDERED TO STAY AWAY from protected person(s)' place of employment/school and not to interfere in any manner with such employment/school.

| Employment/School | Address | City | State | Zip Code |
|---|---|---|---|---|
| Employment/School | Address | City | State | Zip Code |

___ ☐ 6. THE DEFENDANT IS ORDERED NOT TO damage any belongings or property of the protected person(s) and not to shut off any utilities, telephone service, or mail delivery to the protected person(s) or in any way interfere with the living conditions of the protected person(s).

___ ☐ 7. THE COURT GRANTS THE PETITIONER or protected person(s) the use of the residence located at:

| No. & Street | Apt. No. | City | State | Zip Code |
|---|---|---|---|---|

to the exclusion of defendant by **evicting** defendant. The Court orders the defendant to surrender any keys to that residence to the petitioner.

_____ (Sheriff's office) is ordered to **evict** the defendant.

___ ☐ 8. THE COURT GRANTS THE PETITIONER or protected person(s) the use and possession of the following property (including pets or other animals) and/or the return of protected person(s) property:

_____
_____
_____
_____
_____
_____

___ ☐ 9. THE COURT ORDERS a representative of _____ (Sheriff's office) to accompany petitioner to obtain property listed in Order No. 8 above.

LPOR 1
v.14

Docket No. _____ **22·991**

_____ ☐10.   THE COURT PROHIBITS EITHER PARTY from transferring, encumbering, or otherwise disposing of property jointly owned or leased, except in the normal course of business or that which is necessary for the support of the petitioner and/or the minor child(ren).

_____ ☐11.   THE COURT WILL ALLOW _____ to return to the residence at a date and time to be agreed upon by petitioner and law enforcement agency to recover his/her personal clothing and necessities, provided that s/he is accompanied by a law enforcement officer to ensure the protection and safety of the parties.  NO FORCED ENTRY ALLOWED.

_____ ☐12.   THE COURT ORDERS a representative of _____ (Sheriff's office)

to accompany _____ to the residence located

at _____ to recover her/his personal clothing and necessities.

---

### DOMESTIC ABUSE, DATING VIOLENCE ONLY
#### ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

---

_____ ☐13.   THE COURT GRANTS TEMPORARY CUSTODY of the following child(ren) or alleged incompetent to the petitioner: *(name, date of birth, and relationship to petitioner)*

_____

_____

_____ ☐14.   THE COURT ORDERS a representative of _____ (Sheriff's office) to accompany petitioner to where the minor child(ren) or alleged incompetent mentioned in paragraph above is/are currently, and to effect petitioner obtaining physical custody of said child(ren) or alleged incompetent.

_____ ☐15.   THE DEFENDANT IS ORDERED NOT TO interfere with the physical custody of the minor child(ren) or alleged incompetent.

_____ ☐16.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be evicted from the solely owned residence or household and the petitioner granted possession.

_____ ☐17.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be ordered to pay child support and/or spousal support (alimony) pursuant to Louisiana Law.  **The court further orders the defendant to produce at the hearing: most recent income tax returns AND pay stubs or an employer statement documenting gross income to date for the CURRENT year.  If the defendant is self-employed, income and expense statements shall be produced.**

---

### STALKING, SEXUAL ASSAULT ONLY
#### ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

---

_____ ☐18.   THE DEFENDANT IS ORDERED NOT TO contact family members or acquaintances of the protected person(s).

---

### DOMESTIC ABUSE, DATING VIOLENCE, STALKING OR SEXUAL ASSAULT
#### ONLY ORDERS INITIALED BY A JUDGE SHALL APPLY

---

_____ ☐19.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be ordered to pay the following:

☐ all court costs          ☐ attorney fees

☐ evaluation fees          ☐ expert witness fees

☐ cost of medical and/or psychological care for the petitioner, the minor child(ren), alleged incompetent, and/or other protected person(s) necessitated by the domestic abuse, dating violence, stalking or sexual assault.

_____ ☐20.   THE DEFENDANT IS ORDERED TO show cause on the below hearing date why s/he should not be ordered to seek professional counseling, complete a court-monitored domestic abuse intervention program, submit to a medical evaluation and/or submit to a mental health evaluation.

LPOR 1
v.14

☑ 21.   Other:

Docket No. FILED **22991**

2022 FEB -3 PM 3: 43

CIVIL
DISTRICT COURT

**NO WITNESS, OTHER THAN
THE PARTIES, MAY BE
CALLED AT THE HEARING
WITHOUT PRIOR
APPROVAL OF THE COURT**

IT IS FURTHER ORDERED THAT DEFENDANT show cause on __2/24/22__ (month/day/year)
at _1:30_ o'clock _P_. M. in Courtroom No. _303_ of the _Civil District_ Court located
at _421 Loyola Avenue_ in _New Orleans_ La., why the
above Temporary Restraining Order and other relief requested should not be made Protective Orders.

| Date of Order | Time of Order | Order effective through 11:59 PM on | SIGNATURE OF JUDGE |
|---|---|---|---|
| _2/3/22_ month/day/year | _4:11_ ☐AM ☑PM | _4:02_ month/day/year | ☑ Order issued *ex parte* ☐ Order issued after notice and opportunity for hearing given to defendant<br>Judge Lori Jupiter<br>**PRINT OR STAMP JUDGE'S NAME** |

NOTICE: C.C.P. Article 3603.1 - Any person against whom such an order is issued shall be entitled to a court-appointed attorney if the applicant has likewise been afforded a court-appointed attorney.

---

**NOTICE TO DEFENDANT - VIOLATION OF ORDER:**

PURSUANT TO LA. R.S. 14:79, A PERSON WHO VIOLATES THIS ORDER MAY BE ARRESTED, JAILED, AND PROSECUTED.

PURSUANT TO LA. R.S. 13:4611 AND LA. CH. C. ARTICLE 1571, A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF NOT MORE THAN $1,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS 6 MONTHS, OR BOTH, AND MAY BE FURTHER PUNISHED UNDER CRIMINAL LAWS OF THE STATE OF LOUISIANA. THIS ORDER SHALL BE ENFORCED BY ALL LAW ENFORCEMENT OFFICERS AND COURTS OF THE STATE OF LOUISIANA.

LPOR 1
v.14

Docket No: FILED **2299 7**

2022 FEB -3 PM 3:45

CIVIL

---

**NOTICE TO DEFENDANT — FIREARM POSSESSION (Domestic abuse or dating violence ONLY):**

**AS A RESULT OF THIS ORDER, IT MAY BE UNLAWFUL FOR YOU TO POSSESS, RECEIVE, SHIP, TRANSPORT OR PURCHASE A FIREARM, INCLUDING A RIFLE, PISTOL, OR REVOLVER, OR AMMUNITION, FOR THE DURATION OF THIS ORDER PURSUANT TO STATE AND/OR FEDERAL LAWS. See below.**

*If you have any questions whether these laws make it illegal for you to possess or purchase a firearm or ammunition, consult an attorney.*

<u>Federal law: 18 U.S.C. 922 (g)(8)</u> prohibits a defendant from purchasing, possessing, shipping, transporting, or receiving firearms or ammunition* for the **duration** of this order if the following conditions apply:

- Protected person(s) relationship to defendant is checked in Box **A** on page 2 of this order
  **AND**
- Notice and opportunity for a hearing provided
  **AND**
- **EITHER** Judicial finding of credible threat, <u>OR</u>
  Certain behaviors are prohibited (item 1 on page 3 of this order is initialed)

*Under 18 U.S.C. 921 the term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm. The term "ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.*

---

**NOTICE TO DEFENDANT — FIREARM TRANSFER AND SUSPENSION OF CONCEALED HANDGUN PERMIT**
**(Domestic abuse or dating violence ONLY)**

**IF A <u>PROTECTIVE ORDER</u> IS ISSUED AGAINST YOU, YOU MAY BE REQUIRED TO TRANSFER ANY AND ALL FIREARMS OWNED OR POSSESSED BY YOU AND SURRENDER YOUR CONCEALED HANDGUN PERMIT. AS YOU MAY ALSO BE REQUIRED TO STATE UNDER OATH THE NUMBER OF FIREARMS YOU POSSESS, THE TYPE AND LOCATION OF EACH AND COMPLETE A FIREARMS INFORMATION FORM VERIFYING SUCH, BRING THIS INFORMATION TO THE HEARING. THE INFORMATION MAY BE REQUIRED EVEN IF YOU TRANSFERRED THE FIREARMS PRIOR TO THE TRANSFER ORDER.**

<u>Louisiana law: C.Cr.P. Art. 1001 et seq.</u> requires the transfer of all firearms owned or possessed and the suspension of a concealed handgun permit:
- When a person is subject to a permanent injunction or a protective order pursuant to a court-approved consent agreement or pursuant to the provisions of R.S. 9:361 et seq., R.S. 9:372, R.S. 46:2136, 2151, or 2173, Children's Code Article 1570, Code of Civil Procedure Article 3607.1, or C.Cr.P. Articles 30, 320, or 871.1,
  **OR**
- When a person is subject to a Uniform Abuse Prevention Order that includes terms prohibiting possession of a firearm or carrying a concealed weapon.

---

**FULL FAITH AND CREDIT pursuant to 18 U.S.C. § 2265**

The issuing court certifies that it has jurisdiction over the parties and the subject matter under the laws of the State of Louisiana; that the defendant was given reasonable notice and an opportunity to be heard sufficient to protect the defendant's right to due process before this order was issued; or if the order was issued ex parte, the court ordered that the defendant be given reasonable notice and an opportunity to be heard within the time required by the laws of the State of Louisiana, and in any event, within a reasonable time after the order was issued, sufficient to protect the defendant's due process rights.

**THIS ORDER SHALL BE PRESUMED VALID AND ENFORCEABLE IN ALL 50 STATES, THE DISTRICT OF COLUMBIA, TRIBAL LANDS, U.S. TERRITORIES, AND COMMONWEALTHS.**

**NO WITNESS, OTHER THAN THE PARTIES, MAY BE CALLED AT THE HEARING WITHOUT PRIOR APPROVAL OF THE COURT**

_____
SIGNATURE OF JUDGE

_____
Judge Lori Jupiter
PRINT OR STAMP JUDGE'S NAME

LPOR 1
v.14

Docket No. _22 997_

| NOTICE TO LAW ENFORCEMENT |
|---|
| **Pursuant to La. R.S. 14:79, the crime of violation of protective orders – you shall use every reasonable means, including but not limited to immediate arrest of the violator, to enforce this order.  Further, you shall at a minimum issue a summons to the person in violation.** |
| **Pursuant to La. R.S. 46:2140(A), if you have reason to believe that a family or household member or dating partner has been abused AND the abusing party is in violation of this order, you SHALL immediately arrest the abusing party.** |
| **If the expiration date of this order falls on or within five (5) days of the conclusion of a declared state of emergency, this order/injunction shall be enforced throughout that time period.** |

DEFENDANT WAS SERVED AT CLOSE OF HEARING.

Date _____    Clerk _____

FAXED or ELECTRONICALLY TRANSMITTED TO LOUISIANA PROTECTIVE ORDER REGISTRY
Date _02/04/2022_    Clerk _Sondra Sims_

### FAX COMPLETED ORDERS TO 888-568-4558

**Copies to:** 1) Court file  2) Petitioner/protected person(s)  3) Defendant  4) Chief Law Enforcement Official of the parish where the protected person(s) resides  5) Louisiana Protective Order Registry.

LPOR 1
v.14